UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Eric M. LaMarche, Sr.,
     Plaintiff,

     v.                                    Civil No. 04-cv-69-SM
                                           Opinion No. 2006 DNH 117
Paul Bell, Roger Dugre,
Daniel Fedele, Paul Hopwood,
Eric Karavas, and Mark Jordan,
     Defendants

**O R D E R**

Plaintiff, Eric M. LaMarche, Sr., is an inmate at the New Hampshire State Prison ("NHSP").  He brings suit against several corrections officials, claiming they violated his Eighth Amendment rights by using excessive force against him and by failing to protect him from foreseeable attacks committed by other inmates.  Defendants move for summary judgment, saying LaMarche failed to comply with the administrative exhaustion requirements of the Prison Litigation Reform Act.  For the reasons set forth below, defendants' motion is necessarily granted.

**Legal Framework**

I.   Standard of Review.

When ruling on a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Intern'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

II.   The PLRA's Administrative Exhaustion Requirement.

42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act of 1995 ("PLRA"), provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

> prison, or other correctional facility <u>until such administrative remedies as are available are exhausted</u>.

42 U.S.C. § 1997e(a) (emphasis supplied).  The Supreme Court has held that section 1997(e) requires an inmate to exhaust all available administrative processes before filing a federal suit that relates to the conditions of his or her confinement, even if some or all of the relief the inmate seeks cannot be obtained through the available administrative processes.  <u>Booth v. Churner</u>, 532 U.S. 731, 734 (2001) ("The question is whether an inmate seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money.  We hold that he must.").

More recently, the Supreme Court made explicit that which was implicit in <u>Booth</u>: the phrase "with respect to prison conditions," as used in the PLRA's exhaustion provision, incorporates within its scope not just conditions generally affecting the inmate population, but also discrete incidents affecting only a single individual.

> [T]he PLRA's exhaustion requirement applies to all
> inmate suits about prison life, whether they involve
> general circumstances or particular episodes, and

> whether they allege excessive force or some other wrong.

Porter v. Nussle, 534 U.S. 516, 532 (2002).  Consequently, the PLRA's exhaustion requirement applies when the following three criteria are met: (1) the lawsuit was filed by a "prisoner confined in any jail, prison, or other correctional facility"; (2) he or she filed that lawsuit after the effective date of the PLRA (i.e., April 26, 1996); and (3) the lawsuit is "with respect to prison conditions," as that phrase has been interpreted by the Supreme Court.

Here, the first two conditions are plainly met: LaMarche is an inmate at the New Hampshire State Prison and he filed this suit in January of 2004, well after the PLRA's effective date. The remaining question is whether LaMarche's assertion that defendants violated his constitutionally protected rights – by failing to protect him from two foreseeable assaults committed by other inmates and by using excessive force against him – are complaints "with respect to prison conditions."  They are.  See Porter, supra.

4

Accordingly, before he may pursue his section 1983 claims against these defendants, LaMarche must first exhaust available administrative remedies relating to those claims.  Although LaMarche did bring his complaints to the attention of prison officials, he did not strictly adhere to the filing deadlines established by the prison's administrative regulations.  Consequently, defendants assert that he failed to comply with the exhaustion requirements of the PLRA.  Moreover, because the deadlines for filing administrative grievances related to the events at issue have passed, defendants say LaMarche has forfeited the opportunity to administratively exhaust.  Thus, say defendants, not only has LaMarche failed to exhaust, but he is also precluded from doing so and, therefore, cannot sue on the asserted (but unexhausted and unexhaustable) claims.

**Background**

I.  The Events Giving Rise to LaMarche's Claims.

At all relevant times, LaMarche was housed in the prison's Secure Housing Unit ("SHU").  He says he was designated as a "PC-single movement" inmate.  That is to say, because there was concern that he was vulnerable to attack by fellow inmates, he

was held in "protective custody" and was never transported with or housed with other inmates.  He claims defendants all knew that he was a PC-single movement inmate.  Nevertheless, LaMarche says that on May 29, 2002, defendant Jordan transported him from his cell to the "barber room."  LaMarche claims that, contrary to prison policy and with full knowledge that LaMarche should not be left unattended with any other inmates, Jordan left him alone in that room with an inmate named Rivera, while Jordan conducted his rounds in other sections of SHU.  While Jordan was gone, inmate Rivera attacked LaMarche, seriously injuring him.  LaMarche's eye sockets were fractured and his nose was broken.  He required emergency medical treatment and, several months later, reconstructive surgery.

    Approximately 18 months later, in October of 2003, LaMarche says defendants Bell, Fedele, Dugre, Hopwood, and Karavas were transporting him between cells within SHU.  He claims defendants handcuffed him and left him in an area of SHU that made him vulnerable to attack from other inmates (among other things, LaMarche says he informed the corrections officers that at least one inmate was spitting on him).  When LaMarche asked the

corrections officers to move him directly to his new cell, he says they ignored his request.  LaMarche says the officers then released inmate Doughie from his cell and Doughie subsequently attacked, beat, and sexually assaulted him.  According to LaMarche, none of the defendants made an effort to intervene on his behalf to stop the assault.  After the attack, defendants ordered inmate Doughie to return to his cell.  According to LaMarche, those officers then used excessive force against him by kicking and punching him until another corrections officer arrived and ordered defendants to transport LaMarche to his new cell.

II.   Recent Amendments to the NHSP Inmate Grievance Process.

The NHSP has a three-tiered administrative grievance procedure.  See Exhibit E to defendants' memorandum, New Hampshire Department of Corrections Policy and Procedure Directive ("PPD") 1.16, entitled "Complaints and Grievances by Persons under DOC Supervision."  See also LaFauci v. N.H. Dep't of Corrections, 2001 DNH 204 at 7-10 (D.N.H. Oct. 31, 2001). Shortly after the Supreme Court's opinion in Porter, the NHSP amended its administrative regulations governing the inmate

grievance process to provide, among other things, that inmates must invoke the grievance process (by filing an inmate request slip) within 30 calendar days of the date on which the event(s) forming the basis of any complaint occurred.  PPD 1.16 IV.  If the inmate is not satisfied with the response to his request slip, he has an additional 30 days within which to file a grievance with the warden.  If the inmate is dissatisfied with the warden's response, he is afforded another 30-day period within which to file a grievance with the Commissioner of Corrections.  The administrative regulations provide that corrections officials retain the authority to waive any of these administrative deadlines if the inmate shows a "valid" reason for delay.  Id.

    The NHSP's recently-adopted administrative deadlines are mandatory and, absent a waiver, failure to comply with those deadlines will result in the inmate's request being denied as untimely.  Defendants assert that because LaMarche's efforts to exhaust the prison's administrative remedies were untimely, and because he did not obtain (or even seek) a waiver of those deadlines, he is now precluded from exhausting.

LaMarche, on the other hand, points out that although he failed to comply with the administrative deadlines applicable to NHSP's inmate grievance process, he did file the appropriate inmate requests slips/grievances at each of the three levels required by the NHSP's regulations.  On February 14, 2005, he filed an inmate request slip seeking financial reimbursement for the assaults that form the basis of this suit.  Although the record is not entirely clear, it appears that request was denied as untimely.  Subsequently, LaMarche filed a grievance with the prison's warden, and then with the Commissioner of Corrections, both of which were denied as untimely.  Consequently, while LaMarche did not comply with the prison's administrative deadlines, he did present corrections officials at <u>all available levels of appeal</u> with the <u>opportunity</u> to address his complaints on the merits, if they so desired.  They declined that opportunity, choosing instead to deny his grievances as time-barred.

After defendants' filed their motion for summary judgment, but before the court addressed the merits of that motion, the Supreme Court granted certiorari in a case involving precisely

the issue raised in this case: whether an inmate who seeks relief at all available levels of a prison's administrative grievance procedure, but who fails to adhere to that procedure's filing deadlines, has "exhausted" available administrative remedies, as required by the PLRA.  See Woodford v. Ngo, 126 S. Ct. 647 (2005) (granting petition for certiorari).  Accordingly, the court stayed this action pending the Supreme Court's resolution of the issue, and afforded the parties an opportunity to supplement their legal memoranda once a decision was issued in Ngo.  The deadline for such submissions has now passed.  Defendants have filed a supplemental memorandum, while LaMarche has elected not to do so.

## Discussion

LaMarche says he gave prison authorities sufficient notice of his claims and ought to be deemed to have "substantially" complied with the PLRA's exhaustion requirements.  In support of his position LaMarche advances four arguments.  First, he says he did "exhaust" available administrative remedies by filing all required request slips and grievance forms with the appropriate corrections personnel, albeit after the administrative filing

deadlines had passed. Next, he says that while his filings may not have complied with the newly-adopted deadlines, there is no evidence that he was provided with notice of those new deadlines. Accordingly, he implicitly suggests that the new filing deadlines should not apply to him.

Alternatively, LaMarche says he fully exhausted his administrative remedies, albeit through an atypical route – that is, by filing an administrative claim with the New Hampshire Board of Claims (which was subsequently denied, since LaMarche sought damages ($500,000) beyond the jurisdictional limit of that board). See generally N.H. Rev. Stat. Ann. ch. 541-B. And, finally, LaMarche argues that he should be excused from strict compliance with the administrative deadlines due to incapacity, pointing to his documented history of mental illness.

Defendants counter that Lamarche's arguments lack merit and cannot excuse his failure to comply strictly with the established administrative grievance procedure, including its relatively short time limitations. In support of their position, defendants rely heavily on the Supreme Court's recent opinion in Woodford v.

Ngo, 126 S. Ct. 2378 (2006).  In light of that opinion, say defendants, LaMarche's failure to comply with the prison's limitations periods applicable to inmate grievances means he has failed to exhaust available administrative remedies and, therefore, cannot pursue his claims in this forum.  The court agrees.

I.   PLRA's Exhaustion Requirement.

There is no doubt that the administrative exhaustion requirement of the PLRA is compulsory.  See Porter, 534 U.S. at 524 ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory."). The question presented in this case is whether an inmate may comply with that mandatory exhaustion requirement by pursuing available prison administrative remedies beyond the time-frame prescribed by prison administrators.  Until recently, there had been a decided lack of agreement in the various circuit courts of appeals on that issue.  That disagreement has, however, been resolved by the Supreme Court.

In Ngo, the Court held that, prior to filing a claim in federal court, an inmate must fully and "properly" exhaust all available prison administrative remedies in a timely manner.  His or her failure to do so will result in a complete bar to any federal litigation arising out of those claims.  In other words, in Ngo the Court concluded that the text of the PLRA contains an implicit procedural default provision, similar to the federal common law procedural default principle made applicable to habeas corpus petitions.  Ngo, 126 S. Ct. at 2387.  See generally Wainwright v. Sykes, 433 U.S. 72 (1977); Coleman v. Thompson, 501 U.S. 722 (1991).

The majority in Ngo has endorsed the notion that prison officials can, in essence, create extremely short administrative limitations periods (in that case, just 15 days), with which inmates must strictly comply.  Failure to comply with those administrative limitations periods results in the loss of any ability to pursue federal constitutional claims in federal court.  In other words, inmates who make procedural errors during the course of attempting to exhaust available prison administrative remedies are subjected to a "waiver sanction," which completely

precludes access to federal courts on federal constitutional claims.

The dissenters in Ngo compellingly argued against reading so much into the text of the PLRA and counseled against inferring the existence of an implicit procedural default provision.

> In habeas law it is a separate judge-made doctrine of procedural default, stemming from our decision in Wainwright v. Sykes, 433 U.S. 72 (1977), that may bar relief even though a claim has been exhausted. This procedural default doctrine is based on unique considerations of comity in the habeas context, including the need to ensure that the state criminal trial remains the "main event" rather than a "tryout on the road" for a later federal habeas proceeding. Moreover, procedural default in habeas is closely related to the principle that this Court lacks certiorari jurisdiction to review a state-court judgment that rests on an adequate and independent state procedural ground. It is undisputed that these unique considerations do not apply in the context of 42 U.S.C. § 1983 suits, because the "very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights."

Ngo, 126 S. Ct. at 2396 n.5 (Stevens, J., dissenting) (citations omitted). Plainly, however, the majority found those arguments unpersuasive. And, while application of the principles established by the majority opinion in Ngo may, in some cases,

result in harsh or even seemingly unjust results – the inability
of an inmate to pursue a valid and meritorious constitutional
claim in federal court, due to a simple procedural misstep – this
court is obviously bound to apply that precedent.[1]

II. <u>LaMarche's Claims were not Properly Exhausted</u>.

In light of the Court's opinion in <u>Ngo</u>, LaMarche's position,
that he "exhausted" available administrative remedies by filing
his grievances with the appropriate authorities, albeit in an

---

[1] As many courts have observed, the PLRA's exhaustion requirement was not intended to prevent inmates from pursuing valid constitutional claims in federal court. Instead, Congress' goal was to establish a means by which to filter out the valid claims from the frivolous. In his dissent, Justice Stevens observed:

> As explained by Senator Hatch when he introduced the legislation on the Senate floor, the PLRA was needed because the quantity of frivolous suits filed by prisoners was, in Senator Hatch's view, making it difficult for "courts to consider meritorious claims." He continued: "Indeed, I do not want to prevent inmates from raising legitimate claims. This legislation will not prevent those claims from being raised." Similarly, as Senator Thurmond, a cosponsor of the bill, stated: "[The PLRA] will allow meritorious claims to be filed, but gives the judge broader discretion to prevent frivolous and malicious lawsuits filed by prison inmates.

<u>Ngo</u>, 126 S. Ct. at 2401 (Stevens, J., dissenting) (citations omitted).

untimely manner, is without merit. So, too, is his contention that he complied with the PLRA's exhaustion requirement by filing a claim with the New Hampshire Board of Claims. In neither of those situations did LaMarche comply with the PLRA's "proper exhaustion requirement." <u>Ngo</u>, 126 S.Ct. at 2386.

As to his assertion that he should be excused from strict compliance with the prison's administrative filing deadline because (a) there is no evidence that he received notice of those filing requirements, and (b) he suffers from mental illness, the majority opinion in <u>Ngo</u> would seem to foreclose those arguments as well. Moreover, even if such avenues remain open to inmates who fail to timely exhaust available prison administrative remedies, LaMarche has failed to demonstrate that he would be entitled to the relief they might afford. In response to LaMarche's unsupported claim that he never received notice of the 30 day deadline within which to file inmate grievances, defendants have submitted evidence that demonstrates the contrary. Similarly, defendants have submitted evidence demonstrating that LaMarche's claimed mental illness did not preclude him from understanding the nature and import of the

administrative filing deadlines.  In response, LaMarche has remained silent.

The majority opinion in Ngo establishes a seemingly harsh, though straight-forward proposition: if an inmate fails to comply with a prison's administrative filing deadlines, the inmate has not complied with the PLRA's "proper exhaustion" requirement. That, in turn, bars the inmate from litigating any claims in federal court relating to the conditions of his or her confinement.  Such is the case here: there is no dispute that LaMarche filed his administrative grievances in an untimely manner.  Consequently, he failed to properly exhaust those claims as required by the PLRA and cannot pursue them in this forum. LaMarche's remedies, if any, would seem to lie in either the state court system or with the state Board of Claims.

## Conclusion

For the reasons set forth above, as well as those set forth in defendants' memoranda, defendants' motion for summary judgment (document no. 47) is granted.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

October 13, 2006

cc:  Michael J. Sheehan, Esq.
     Nancy J. Smith, Esq.